Judge Owsi.ey
delivered the opinion.
On the 5th of January, 1791, Conrad Humble, the an-, cestorof the parties to the present contest, made and published bis last will and testament in writing; and after the accustomed preamble, declarts, “I do make and ordain this “my last will and testament, touching such worldly estate “wherewith it has pleased God to bless me with, in this “life, I give, devise and dispose of the same in the following manner and form: — First, I give and bequeath unto “Hannah, my dearly beloved wife, and Uriah, my son, all “mv household goods, money and moveable effects.”
The will contains various other bequests, but none of which names the negroes belonging to the testator, nor is there any clause in the will importing a residuary bequest of the balance or residue of his estate,
At the time of making the will, the testator owned sevr eral negroes and other property, and having sometime (hereafter departed this life, his wife and son Uriah took the possession of the negroes, under that clause of the will giving to them all the testator’s household goods, money, and moveable effects.
The wife of the testator having sometime thereafter departed this life, the present appellees exhibited their bill in equity against the son, Uriah, charging that, by the clause cited, the negroes did not pass to the wife of the testator and the son Uriah, under the will; but that being undis-posed of fay the will, they descended to the heirs of the testator generally. They also charge, that Uriah, during the lifetime of his mother, disposed of one of the negroes for the sum of f300, and exchanged one other for a negro which he now* owns, and received in the exchange hue hundred dollars: they also allege that Uriah has had the use of the negroes ever since the decease of the testator, and ought *124 to be compelled to account for their hire; — they charge themselves to be jointly with Uriah the heirs of the testator, and ask for a partition of the slaves, and an account against Uriah for the negroes sold, and the hire, &c. But should they be mistaken as to the import of the will, and the negroes should, contrary to their expectation, be held to pass thereby to the wife of the testator and Uriah, they allege that, as the heirs of their mother, they are jointly with Vriab entitled to an equal interest in her moiety of the no-groes, and as such ask for partition of that interest. They eharge, moreover, that Uriah was, at the decease of their mother, greatly indebted to her, as well on account of the negroes sold, as for the use and enjoyment of the estate which was devised to the mother; and they also pray an account to be taken against Uriah for those debts, and general relief, &c.
Uriah, by his answer, admits the execution and publication of the will by his deceased father, but insists that by its fair import the negroes were given to him and his deceased mother: he alleges, moreover, that it was designed by the testator to give a joint estate in the negroes to bina and bis inpther, during the mother’s life, and that- after his mother’s decease, the whole of the negroes were intended to be given to him, as he has been informed, and as he expects to prove by declarations used by the testator at the time of making the will. He admits the sale of one of the negroes, and the exchange of another, as charged in the bill; but that it was done not only by (he advice and through the solicitation of the mother, but also with the knowledge and privity of the complainants, who, at that time, intimated no pretence of claim to any part of the negroes. He admits that he resided with his mother at her special request until her decease, but denies that he was indebted to her any thing, or that he ought to be compelled to account either for the hire of the negroes, or for the use of the place devised to the mother during her life, and upon which they resided, fyc. lie requires of the complainants full proof of the several allegations of their bill, &c.
On a final hearing, the circuit court beiDg of opinion the negroes did not pass by the will, but descended to the heirs of the testator; and being also of opinion the negroes could not be divided in kind, pronounced a decree ordering such of them as bad not been sold by Uriah, and that which he acquired by the exchange, to be sold, and distribution to be *125 made of the proceeds of sale, according <o the right? ef eacl) of the heirs; and as to the negro sold by Uriah, decreed that be should account therefor, and mcrccver directed an account to he taken for hire, &c. b*’i refused to decree any thing to the complainants on account ef the nee of the plantation, &c. during the life of the mother, &c.
From that decree Uriah has appealed to this court.
This court cannot concur with the circuit court in its exposition of the will. The language employed in the will is certainly not as appropriate as might have been used to. pass the slaves; but in giving an exposition to wills, wo should not search for the most appropriate1 expressions which could possibly have been used, but endeavor, by consulting the language employed, to ascertain what, was most probably intended by the maker of the will. Slaves, ⅛ their nature, are moveable; and although tliey might have been described with more precision by other expressions, than moveable effects, yet when it is recollected that by that part of the will first cited, the testator has evinced a fixed design net to die intestate as to any part of his estate; and when it is also observed that the will contains no other bequest which can, upon the most enlarged and liberal rules of interpretation, apply to the slaves, ive can entertain no. reasonable doubt, but by the expressions “moveable effects,” the testator intended to dispose of his slaves. These expressions, it is true, may, in strict propriety, embrace ether speeies-of property; but as slaves are, in their nature, moveable, in furtherance of the marked design of the testator not to die intestate, we apprehend, that by those expressions the slaves must be construed to have passed to the wife of-the testator and bis ion Uriah.
By that provision, however, Uriah cannot have acquired, a greater interest in the slaves than that cf his mother. The slaves must be admitted to have passed to them beth jointly, and under the laws of this country, upon the death of neither could the other become vested with a several interest in the whole of *he slaves. The evidence of one witness, who was present at the making of the will, it is-true, proves that the testator at that time expressed an intention, and so understood the import of the will, that Uriah should have the slaves after the decease of bis mother. But the evidence of that witness is clearly contrary to the jroport of the will; and it is a settled rule, that parol evit, *126 deneé cannot be admitted to vary the import of the la#-* SuaSe «napLíjed in a will.
Parol evi-deuc*- csnnot b«.‘ admitted to vary or extend ¡tie tan-⅜⅛5 ° a
' As to a moiety of the slaves, therefore, the wife of the testator, upon his death, became entitled under the will, and consequently such part thereof as she had not disposed of in her life time, mast have descended upon her heirs at her decease To that interest, therefore, the complainants in the circuit court, in common with the defendant, as his, heirs, are entitled to an equal interest; and for-the purpose 0/ compelling partition of that interest, the complainants properly resorted te a court of equity.
But in decreeing partition, we are not of opinion the whole of the staves should be sold; for, as the wife of Ib'e intestate, and the son Uriah, held them under the will, it is perfectly clear, as has been repeatedly held by this court, that if either had applied for partition in her lifetime, the court could not have decreed a sale; and since her death, those representing her, and claiming the interest to which she was entitled, cannot assume a different attitude, or jps entitled to a different decree, than she would have been entitled to had she brought suit for the same purpose.
As respects her undivided moiety, however, we apprehend there may be a decree for a sale. That moiety descended at her death upon her heirs; and under the statutes of this country, where slaves, which descend, cannot be divided in kind the chancellor may order a sale, and direct the proceeds according to the rights of those respectively entitled.
It is only a moiety of the slaves and their increase which were owned by the testator at his death, and ‘hat received in exchange for one of them, and not those disposed of by Uriah and his mother in her lifetime, that may be sold. Uriah should no doubt be compelled to account to the complainants for their proportion of the value of the negro sold in the lifetime of the mother, but as he was sold by the approbation of the mother, she could not have been entitled to more than a moiety of his price, and as that moiety is not shewn to have been paid to her, he should account to her heirs for the same, deducting therefrom his interest a& one of the heirs,, and, paying interest on the residue from the time of sale, Uriah should also account in the same way for a moiety of the one hundred dollars received in the exchange of the other negro, and also for the hire of a moiety of the negroes, deducting his interest as one of tbe-lieirS *127 of bis mother, from the time of her decease. With reject to the other claims asserted by the complainants, we Concur with the circuit court in the opinion that Uriah cannot be made chargeable.
Bibb and Talbot for appellants, Hardin contra.
The decree must be reversed with costs, and the cause remanded to the court below, and a decree there entered according to the rules and principles of equity, and not inconsistent with this opinion.